1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11   CONSTRUCTION LABORERS TRUST          CASE NO. CV 17-7164 AB (SSx)
     FUNDS FOR SOUTHERN CALIFORNIA
12   ADMINISTRATIVE COMPANY,               **MEMORANDUM DECISION AND ORDER**

13                    Plaintiff,           **GRANTING PLAINTIFF'S**

14        v.                               **APPLICATION FOR RIGHT TO**

15   GEORGE ANDREW DOMINGUEZ, et           **ATTACH ORDER AND WRIT OF**
     al.,
16                                         **ATTACHMENT**
                     Defendants.
17                                         **[Dkt. No. 13]**

18

19                            **I.**

20                       **INTRODUCTION**

21

22        On September 28, 2017, Plaintiff Construction Laborers Trust

23   Funds for Southern California Administrative Company ("CLTF" or

24   "Plaintiff") filed a civil complaint against Defendants George

25   Andrew   Dominguez   ("Dominguez"),   Hudson   Insurance   Company

26   ("Hudson"),   and   Suretec   Insurance   Company   ("Suretec").[1]

27   _____
     [1] "Defendant" in the singular shall refer to Dominguez only.
28   "Defendants" in the plural shall refer to Dominguez, Hudson and
     Suretec collectively.

("Complaint," Dkt. No. 1). The Complaint asserts claims for contributions to employee benefit plans, specific performance, preliminary and permanent injunctive relief, breach of settlement agreement, recovery against license bond, and recovery against labor and material payment bonds. (Id. at 4-16).

Two weeks later after Plaintiff filed the Complaint, on October 12, 2017, Plaintiff filed an Ex Parte Application for a Right to Attach Order and Writ of Attachment, and for a Temporary Protective Order.[2] ("Application" or "Appl.," Dkt. No. 13). The Application was supported by a Memorandum of Points and Authorities ("Memo.") and the declarations of Marsha M. Hamasaki ("Hamasaki Decl.") and Yvonne Higa ("Higa Decl."). (Id.). Defendant filed an Opposition on October 16, 2017, ("Opp."), including the declaration of George Andrew Dominguez ("Dominguez Decl."). (Dkt. No. 17). That same day, the Court held a telephonic hearing and issued an Order denying the Ex Parte Application without prejudice on the procedural ground that Plaintiff had not shown that it would suffer irreparable harm if the matter were heard as a regularly noticed motion. (Dkt. No. 19). On October 17, 2017, Plaintiff filed a Notice of Hearing setting the hearing on the merits of its Application for November 7, 2017, (Dkt. No. 20), which the Court continued to November 21, 2017. (Dkt. No. 33).

\\

\\

---

[2] This Order addresses only the request for a right to attach order and writ of attachment. Plaintiff's request for a "temporary protective order" is not within the scope of the Magistrate Judge's authority.

On October 27, 2017, Defendant filed a Supplemental Opposition, ("Supp. Opp."), including another declaration of George Andrew Dominguez ("Dominguez Supp. Decl."). (Dkt. No. 26). Plaintiff filed a Reply on November 3, 2017, ("Reply," Dkt. No. 29), including additional declarations by Marsha M. Hamasaki, ("Hamasaki Supp. Decl.," Dkt. No. 30), and Yvonne Higa. ("Higa Suppl. Decl.," Dkt. No. 31). The Court held a hearing on November 21, 2017. For the reasons discussed below and at the hearing, Plaintiff's Application for a Right to Attach Order and Writ of Attachment is GRANTED.

## II.

### ALLEGATIONS OF THE COMPLAINT

Plaintiff is an administrator and agent for collection of several employee benefit plans, and a fiduciary as to those plans. (Complaint ¶ 3). The plans were created by written agreements, and qualify as "employee benefit plans" and "multi-employer plans" within the meaning of the relevant provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Id.).

Defendant is an individual doing business as G.A. Dominguez. (Id. at ¶ 4). Defendant is a party to written collective bargaining agreements with Plaintiff and its affiliated local unions. (Id. ¶ 11). Pursuant to these agreements, Defendant is required to pay fringe benefit contributions for each hour worked by his employees performing services covered by the agreements, and to deliver to Plaintiff monthly contribution reports that identify the employees,

the hours worked by each employee, and the amount of the contributions due. (Id. ¶ 13). The contributions are to be paid monthly. (Id.). In the event that Defendant fails to pay the contributions timely, he is liable for interest on the unpaid amounts, plus liquidated damages in a sum equal to the greater of $25.00 or 20% of the unpaid contributions. (Id. ¶¶ 16-17). The agreements empower Plaintiff to audit Defendant's payroll and business records, with resulting costs charged to Defendant. (Id. ¶ 18).

Plaintiff alleges that Defendant employed workers covered by the agreements but failed to pay benefits for certain periods from January 2014 through July 2017. (Id. ¶¶ 19 & 23). Defendant previously entered into a settlement agreement concerning amounts owed for the period from March 2016 to September 2016, (id. ¶¶ 41-42), but failed to make all the payments. (Id. ¶ 44). Defendant has also failed to permit Plaintiff to conduct a complete audit of his payroll and business records. (Id. ¶¶ 20-21).

**III.**

**THE ATTACHMENT APPLICATION AND THE PARTIES' CONTENTIONS**

By the instant Application, Plaintiff "seeks to attach funds owed to [Defendant] by his prime contractor and by the public agencies pending final judgment[,] which may partially secure recovery of the funds owed by [Defendant,] and to record the writ of attachment against [Defendant's] business property prior to its sale." (Memo. at 2). Plaintiff calculated in its opening brief

4

that as of September 27, 2017, Defendant owed Plaintiff at least $158,832.85. (Id. at 10). However, Plaintiff sought to attach only $130,000.00 of Defendant's assets in light of the possibility that it might prevail on its Sixth Claim for Relief against Suretec for unpaid compensation guaranteed by a payment bond. (Id.; see also Complaint at 20-21). Plaintiff further revised its calculations in its Reply to reflect adjustments made after the Application was filed. Plaintiff determined that the revised total amount owed by Defendant, including unpaid fringe benefits, liquidated damages, audit fees, and interest as of October 27, 2017, was $139,576.26. (Id.; see also Higa Supp. Decl. ¶ 9). Plaintiff further conceded that the amount it is now seeking from Suretec could reduce Defendant's liability to $102,185.95. (Reply at 11). Plaintiff presently seeks to attach only $75,000.00 of that amount in order to "free some $27,000.00 to [Defendant] for the expenses and legal fees pending final judgment" of this matter. (Id.).

The specific assets owned by Defendant which Plaintiff seeks to attach are:

A)    Lien against real property commonly known as 535 537 W. Grand Avenue, Escondido, CA 92025;

B)    Proceeds of the sale of real property commonly known as 535-537 W. Grand Avenue, Escondido, CA 92085 [sic];

C) All contract earnings, right to payments, retention, for work performed by Defendant for the San Diego Unified School District;

D) All contract earnings, right to payments, retention for work performed for the Whittier Union High School District;

E) All Defendant's accounts receivables, payments, right to payments, owed by JTS Modular Inc., and all funds payable thereto up to [$75,000.00] in JTS Modular Inc.'s possession, custody and/or control, including subcontract earnings for work performed for JTS Modular Inc., for the Pomona Unified School District and/or any other subcontract work by Defendant for JTS Modular, Inc.

F) Funds held in bank accounts with City National Bank.

(Appl., Exh. A at 6).

Plaintiff argues that it is entitled to attach Defendant's assets for at least three reasons. First, Plaintiff contends that Defendant evidently does not have the funds on hand to pay the amounts owed, as demonstrated by his failure to pay monies due under the settlement agreement and his alleged submission of "unpaid false reports as confirmed by the audit of payroll records,

and certified payroll records on public works projects." (Memo. at 10). Plaintiff believes that Defendant owes "substantial debt" not only to Plaintiff, but also to the IRS, as evidenced by tax liens levied by the IRS. (Reply at 3; Hamasaki Decl. ¶ 8 & Exh. 3). Second, Plaintiff is concerned that Defendant may be shutting down his business because his commercial property is for sale by owner. (Memo. at 10). Plaintiff argues that further evidence of Defendant's potential imminent departure from the business is suggested by Defendant's failure to submit monthly contribution reports since May 2017, even though other records confirm that he has had employees on his payroll since that time, and by his failure to pay the contributions due. (Id.). Third, Plaintiff maintains that Defendant's unwillingness to communicate indicates that Plaintiff will recover nothing unless it obtains contributions from Defendant's known projects for which Defendant will receive payment, or from the proceeds of the sale of his commercial property. (Id. at 11).

Defendant does not challenge Plaintiff's allegations that he is delinquent in making required contributions, or even the amounts that Plaintiff alleges that he owes.[3] Instead, Defendant argues that the "scope" of the proposed attachment is "problematic" and that there is no danger that funds will not be available if Plaintiff prevails in this action. (Supp. Opp. at 1). Defendant asserts four challenges to the "scope" of the proposed attachment,

---

[3] Defendant does summarily assert, however, without citation to statutory or case law or further discussion, that Plaintiff's liquidated damages claim is "arguably impermissible given the punitive nature of the damages." (Supp. Opp. at 2, 8).

which he contends impermissibly encompasses exempt property. Defendant notes first that "it could be argued" that Plaintiff is seeking to attach assets held "in trust" by Defendant in which he has no ownership interest. (Id.). According to Defendant, the rights of his bond issuers (and co-Defendants), Hudson and Suretec, create a "trust relationship" in which payments by third parties to Defendant for work covered by the bonds should be construed as monies held "in trust" by Defendant for the benefit of Hudson and Suretec. (Id.). Second, Defendant claims that his assets are community property, and that attachment would infringe the property rights of his non-debtor spouse. (Id.). Third, Defendant maintains that as an individual, he is "entitled to assert certain exemptions" under California Code of Civil Procedure §§ 703.010-704.995, although he does not identify the specific exemptions that he believes may apply.[4] (Id.). Fourth, Defendant asserts that Plaintiff is not permitted under California Code of Civil Procedure § 487.020(b) to attach property that is necessary to support Defendant and his family, including funds needed to pay for attorney's fees so that Defendant may meaningfully defend the instant action on the merits. (Id.) (citing Randone v. Appellate Dep't, 5 Cal. 3d 536, 562 (1971)).

    As to the contention that there is no risk that funds will not be available to make Plaintiff whole should Plaintiff prevail

---

[4] The Sections cited by Defendant in connection with this argument specifically concern exemptions that may be claimed in post-judgment proceedings. However, California Code of Civil Procedure Section 487.020 specifically provides that "[a]ll property exempt from enforcement of a money judgment" is also "exempt from [pre-judgment] attachment." Cal. Code Civ. Proc. § 487.020(a).

in this action, Defendant argues that "[t]he issuance of payment and performance bonds on each of the projects upon which [Plaintiff] has filed its lawsuit, as well as all other public works projects, ensures that, should [Plaintiff] prevail, funds will be available to satisfy [Plaintiff's] claim." (Supp. Opp. at 2). According to Defendant, "[p]ractically speaking, the presence of such bonds already secure[s] [Plaintiff's] claim," thereby satisfying the purpose of prejudgment attachments. (Id. at 6). Finally, Defendant states in his declaration that although he listed real property for sale by owner with an asking price of $585,000.00, he has received no reasonable offer in the year that the property has been on the market, and he does not anticipate that a sale will be finalized "in the near future." (Dominguez Supp. Decl. ¶ 10).

Plaintiff refutes each of the defenses raised by Defendant. With respect to Defendant's challenges to the "scope" of the proposed attachment, Plaintiff argues that sums owed by third parties to Defendant are Defendant's "accounts receivable" and are not held "in trust" for the benefit of Defendant's bond issuers. (Reply at 5). Plaintiff further contends that community assets are subject to attachment. (Id.) (citing, inter alia, Century Surety Co. v. Polisso, 139 Cal. App. 4th 922, 942 (2006), and California Family Code § 910(a)). To the extent that Defendant is entitled to any statutory exemptions from attachment, which he does not identify, Plaintiff notes that the California Code of Civil Procedure sets out procedures for claiming exemptions after levy. (Reply at 7) (citing Cal. Code Civ. Proc. §§ 703.510 et seq.).

With respect to Defendant's claim that the assets Plaintiff seeks to attach are needed to support his family and his defense in this litigation, Plaintiff states that such a claim requires a full disclosure of Defendant's assets. (Reply at 7). As to Defendant's contention that funds will be available through bond issuers Hudson and Suretec, Plaintiff argues that it is not clear that the bond amounts will be sufficient as "[p]ayment bonds on projects only cover the contributions owed to the employees for their work on the bonded project, and do not cover [Plaintiff's] claim for liquidated damages[] and audit fees." (Id. at 4). Finally, with respect to Defendant's claim that liquidated damages are "arguably impermissible" given their punitive nature, Plaintiff emphasizes that both the written agreements and ERISA, 29 U.S.C. § 1132(g)(2), provide for liquidated damages, which the Ninth Circuit has "repeatedly held . . . are mandatory elements of any court award." (Reply at 2) (citing cases; emphasis in original).

**IV.**

**DISCUSSION**

**A.    California Law Applies To Plaintiff's Application For Right To Attach Order And Writ Of Attachment**

Plaintiffs in federal court may invoke whatever remedies are provided under the law of the state in which the federal court is located for "seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64; Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 558 (9th Cir. 1992)

(discussing Rule 64); NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F. Supp. 2d 1111, 1116 (C.D. Cal. 2011). These remedies may include a writ of attachment. Fed. R. Civ. P. 64; see also VFS Fin., Inc. v. CHF Express, LLC, 620 F. Supp. 2d 1092, 1094-95 (C.D. Cal. 2009) (Rule 64 "provides for prejudgment attachment[] and other prejudgment remedies . . ." authorized under state law). Because attachment is sought against Defendant in the state of California, California law determines whether and under what conditions a writ of attachment may issue. In California, the procedures and grounds for obtaining orders for prejudgment writs of attachment are codified at California Code of Civil Procedure §§ 481.010-493.060.

**B.    Overview Of California Law Governing Attachment**

Attachment "is a remedy by which a Plaintiff with a contractual claim to money (not a claim to a specific item of property) may have various items of a defendant's property seized before judgment and held by a levying officer for execution after judgment." Waffer Int'l Corp. v. Khorsandi, 69 Cal. App. 4th 1261, 1271 (1999) (emphasis omitted). California allows prejudgment attachments under limited circumstances as "a provisional remedy to aid in the collection of a money demand." Kemp Bros. Constr. Inc. v. Titan Elec. Corp., 146 Cal. App. 4th 1474, 1476 (2007). It is "a harsh remedy because it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated." Martin v. Aboyan, 148 Cal. App. 3d 826, 831 (1983). Therefore, the requirements for the issuance of a writ of

attachment are strictly construed against the applicant.  Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000) ("Attachment is a purely statutory remedy, which is subject to strict construction.").  The burden is on the applicant to establish each element necessary for an attachment order by a preponderance of the evidence.  Loeb & Loeb v. Beverly Glen Music, Inc., 166 Cal. App. 3d 1110, 1116 (1985).

A writ of attachment may be issued "only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars."  Cal. Code Civ. Proc. § 483.010(a) (emphasis added).  For damages to be "readily ascertainable," the contract "must furnish a standard by which the amount due may be clearly ascertained and there must exist a basis upon which the damages can be determined by proof."  CIT Group/Equipment Financing, Inc. v. Super DVD, Inc., 115 Cal. App. 4th 537, 540 (2004) (internal quotation marks omitted); see also Pet Food Express, Ltd. v. Royal Canin USA Inc., 2009 WL 2252108, at *5 (N.D. Cal. July 28, 2009) ("lost profits" that plaintiff sought to attach were not "certain, fixed, or even readily ascertainable" and thereby failed to "meet the threshold requirement for this court to even consider issuing a writ of attachment").  Attachment is permitted on unsecured claims or claims secured by personal property, but not on claims secured by real property.  Cal. Code Civ. Proc. § 483.010(b).  Attachment lies on any claim against a partnership or corporation or on claims against individuals that arise out of the conduct by

the individual of a trade, business, or profession.  Id. § 483.010(c).

A court must find all of the following before an attachment order may issue: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than recovery of the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero.  Id. § 484.090(a).  To establish the "probable validity" component, the plaintiff must show that it is more likely than not that it will obtain a judgment against the defendant.  Id. § 481.190; see also Pos-A-Traction, 112 F. Supp. 2d at 1182.  "In determining the probable validity of a claim where the defendant makes an appearance, the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation."  Loeb & Loeb, 166 Cal. App. 3d at 1120.

California law restricts the availability of pre-judgment attachments in part by providing the defendant with an opportunity, prior to a ruling on an attachment application, to establish that the property sought to be attached is exempt.  As summarized in one California practice guide,

The state cannot properly withdraw the essentials a defendant needs to live, to work, to support a family,

or to litigate a pending action before an impartial confirmation of the actual validity of the creditor's claim after a hearing on that issue.  [Randone v. Appellate Department, 5 Cal. 3d 536, 96 Cal. Rptr. 709, 488 P.2d 13 (1971)]  Therefore, the Attachment Law:

(1)    requires before levy either an opportunity for the defendant to claim exemptions or a showing by the plaintiff that the property sought to be attached is not exempt [Code Civ. Proc., § 484.070 (exemptions)];

(2)    generally, subjects only business property to levy [Code Civ. Proc., § 487.010, subds. (a) and (b) (corporate or partnership or association property otherwise subject to levy)];

(3)    requires, when the defendant is a natural person, that the plaintiff's claim arise out of the defendant's conduct of a trade, business, or profession, and not run to money or property used primarily for family or household purposes [Nakasone v. Randall, 129 Cal. App. 3d 757, 181 Cal. Rptr. 324 (2d Dist. 1982)];

(4)    provides a nonseizure form of levy in many circumstances [Code Civ. Proc., § 488.315

1   (attachment of real property by recordation of
2   writ)];

3

4   (5)  authorizes the court to issue a temporary
5        protective order in lieu of a writ in the
6        exceptional circumstances where a writ might be
7        issued ex parte [Code Civ. Proc., § 486.030];

8

9   (6)  authorizes the court to review issuance of an ex
10       parte writ, if based on defendant's alleged
11       insolvency, within 5 court days after plaintiff is
12       served with defendant's request to do so [Code Civ.
13       Proc., § 485.010, subd. (c)];

14

15  (7)  permits defendant to apply to set aside a right to
16       attach order and quash a writ of attachment [Code
17       Civ. Proc., § 485.240];

18

19  (8)  permits defendant to substitute an undertaking for
20       the property seized [Code Civ. Proc., § 489.310];
21       and

22

23  (9)  requires that property of an individual sought to
24       be attached be described so that the specific
25       property can be identified [Code Civ. Proc.,
26       § 484.020, subd. (e)].

27

28  Moore & Thomas, Cal. Civ. Prac. Procedure § 16:4 (2017).

15

## C. **Plaintiff Is Entitled To A Writ Of Attachment**

### 1. **The Criteria For An Attachment Order Are Satisfied**

#### a. The Claim Upon Which The Attachment Is Based Is One Upon Which An Attachment May Issue And The Amount To Be Attached Is Greater Than Zero

Defendant does not challenge that he is bound by contract to submit fringe benefit contributions to Plaintiff for each hour worked by his employees who perform work covered by the agreements. (See Higa Decl. ¶¶ 7, 9, 11, 16 & Exh. 5 (Short Form Agreement incorporating by reference Construction Master Labor Agreements)). Accordingly, the claim is one upon which an attachment may be issued -- it arises from a claim for money, based on contract, arising "out of the conduct by [Defendant] of a trade, business, or profession," Cal. Code Civ. Proc. § 483.010(c), in an amount that is fixed or ascertainable that is over five hundred dollars. Id. § 483.010(a). Furthermore, the amount to be attached to secure recovery of the claim is greater than zero. Id. § 484.090(a)(4).

#### b. Probable Validity Of The Claim Favors Plaintiff

To establish the "probable validity" component, Plaintiff must show it is more likely than not that it will obtain a judgment against the defendant. Cal. Code Civ. Proc. § 481.190; see also Pos-A-Traction, 112 F. Supp. 2d at 1182. "In determining the probable validity of a claim where the defendant makes an

appearance, the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." Loeb & Loeb, 166 Cal. App. 3d at 1120. Thus, it is not enough for the plaintiff to make out a prima facie case for breach of contract; rather, the plaintiff must also show that the defenses raised are "less than fifty percent likely to succeed." Pet Food Express, Ltd. v. Royal Canin USA Inc., 2009 WL 2252108, at *5 (N.D. Cal. 2009). If an applicant fails to rebut a factually-supported defense that would defeat its claims, the applicant has not established probable validity. See Intervest Mortgage Inv. Co. v. Skidmore, 2008 WL 5385880, at *7 (E.D. Cal. Dec. 19, 2008) ("[Plaintiff] argues that it may not be required to refute [defendant's] defenses, i.e. that probable validity on the prima facie case may be sufficient. The court disagrees. Section 484.090 requires prediction of the probable outcome of the litigation, and the affirmative defenses and counterclaims will potentially influence this outcome."); Plata v. Darbun Enters., Inc., 2009 WL 3153747, at *7 (S.D. Cal. Sept. 23, 2009) (denying right to attach order because an asserted defense prevented the plaintiffs from establishing the probable validity of their claim).

Here, Defendant does not even attempt to contest that he owes benefit contributions under the contract to Plaintiff, or seriously challenge the validity of Plaintiff's claim. Plaintiff's Application is based on documentary evidence, including written contracts, monthly reports, and data strongly suggesting that Defendant has underreported or entirely failed to report hours

worked. In contrast, the Supplemental Opposition is devoid of evidence or argument suggesting that Defendant might somehow prevail on the merits at trial, either due to Plaintiff's failure of proof or to Defendant's affirmative defenses.[5] Accordingly, the Court concludes that it is more likely than not that Plaintiff will obtain a judgment against Defendant. See Cal. Code Civ. Proc. § 481.190.

      c.    Attachment Is Not Sought For A Purpose Other Than Recovery Of The Claim

There is no suggestion in the record before the Court that Plaintiff is seeking attachment for any purpose other than securing recovery of the claim. Defendant has already breached a settlement agreement, demonstrating an unwillingness or inability to pay, and Plaintiff persuasively contends that it has good reason to believe

---

[5] Indeed, many of Defendant's so-called "affirmative defenses" in his Answer to the Complaint are not affirmative defenses at all. (See Dkt. No. 28 at 8-13). An affirmative defense "plead[s] matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations are true." Federal Deposit Ins. Corp. v. Main Hurdman, 655 F. Supp. 259, 262 (E.D. Cal. 1987); see also In re Rawson Food Service, Inc., 846 F.2d 1343, 1349 (11th Cir. 1988) ("An affirmative defense raises matters extraneous to the plaintiff's prima facie case; as such, they are derived from the common law plea of 'confession and avoidance.'") (internal quotation marks omitted). However, "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002); see also In re Rawson Food Service, 846 F.2d at 349 (defenses which merely "negate an element of the plaintiff's prima facie case . . . are excluded from the definition of affirmative defense in Fed. R. Civ. P. 8(c)") (internal quotation marks omitted). Regardless, Defendant's Supplemental Opposition does not argue that Defendant is likely to prevail at trial under any theory.

that Defendant has underreported, or entirely failed to report, employee work hours for which he would be required to make benefit payments.  Defendant's failure to produce monthly reports documenting his employees' hours suggests that Defendant may be trying to evade his obligations to Plaintiff.  In this context, and in the absence of any other countervailing evidence, it does not appear that Plaintiff is seeking an attachment for an impermissible purpose.  As such, all of the criteria for a writ of attachment are met.

**2.    Defendant's Challenges To The Proposed Attachment Fail**

Defendant raises numerous challenges to the Application on the grounds that the property to be attached is exempt or, alternatively, that attachment is unnecessary.  Defendant's contentions are not persuasive.  Nonetheless, the Court will briefly address each one.

**a.    Defendant's Accounts Receivable Are Not Held "In Trust" For His Bond Issuers**

Defendant vaguely contends that "it could be argued" that the funds Plaintiff seeks to attach are actually the property of Defendant's bond issuers, and that Defendant is holding or will hold the funds only "in trust" for the benefit of the rightful owners, Hudson and Suretec.  (Supp. Opp. at 1, 6) (citing <u>Richion v. Mahoney</u>, 62 Cal. App. 3d 604, 609 (1976)).  According to Defendant,

1          [I]t is possible that a Court may find that the funds
2          held by Defendant are funds in which Defendant only holds
3          a partial, if any, equitable interest.  If a Court came
4          to such a conclusion, it would follow that until
5          Defendant satisfies his obligations, any funds that
6          Defendant receives or has in his possession are funds
7          that would, effectively, be held in trust by Defendant
8          for the benefit of the bonding company or claimants.

10    (Supp. Opp. at 6).  Plaintiff counters that the funds owed by the
11    San Diego and Whittier School Districts for Defendant's work on
12    those projects are owed directly to Defendant, for whom the
13    promised funds are simply accounts receivable.  (Reply at 5).

15         California law provides that "[a]n attaching creditor seeking
16    to subject the property of a debtor to payment of his debt obtains
17    a lien only upon the title or interest the debtor has and where no
18    actual interest is shown[,] the attaching creditor gets
19    nothing. . . . [P]roperty held by the debtor in trust is not
20    subject to attachment for his debts."  Richion, 62 Cal. App. 3d at
21    609 (internal citations omitted).  However, Defendant has utterly
22    failed to show that under California law, a party owed money
23    pursuant to a contract with a third party for work insured by a
24    bond issuer holds the funds "in trust" for his bond issuer.
25    Defendant's repeated use of phrases such as "it could be argued,"
26    "it is possible" and "if the Court came to such a conclusion,"
27    coupled with the complete lack of citations to relevant case law,
28    only confirm that Defendant's position is speculative and

unsupported. Defendant has not shown that his contract earnings and accounts receivable are not subject to attachment. This defense fails.

b.    Community Property Is Attachable

Defendant also argues that the property Plaintiff seeks to attach is community property subject to the rights of his non-debtor spouse, who is not a party to this action. (Supp. Opp. at 2, 7) (citing Cal. Code Civ. Proc. § 487.020(b)). Plaintiff counters that a community estate may be held liable for any debt incurred by either spouse prior to or during the course of the marriage. (Reply at 5) (citing Century Surety Co. v. Polisso, 139 Cal. App. 4th 922, 942 (2006)).

The gravamen of Defendant's argument is unclear. However, to the extent that Defendant is attempting to argue that community property is exempt from attachment, in whole or in part, simply because it is community property in which a non-debtor spouse holds an interest, he is plainly wrong. California Family Code Section 910(a) provides that "the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." Cal. Fam. Code § 910(a); see also United States v. McGrew, 2014 WL 7877053, at *5 (C.D. Cal. Dec. 19, 2014), aff'd, 669 F. App'x 831 (9th Cir. 2016) ("Under California law, the entire community is liable for the debts

21

incurred by one of the spouses during the marriage, if the debts were incurred prior to separation.") (citing Section 910(a)).[6] The California Supreme Court has further explained that "the liability of community property is not limited to debts incurred for the benefit of the community, but extends to debts incurred by one spouse alone exclusively for his or her own personal benefit." Lezine v. Sec. Pac. Fin., 14 Cal. 4th 56, 64 (1996). Community property is not exempt from attachment simply because it is community property. See, e.g., McKnight v. Superior Court, 170 Cal. App. 3d 291, 295 (1985) (noting without comment that plaintiff had obtained a writ of attachment against real property owned by defendant and his non-debtor spouse as community property). This defense fails.

c.    Defendant Fails To Identify Any Applicable Statutory Exemptions

Defendant states that as an individual, he is entitled to the protections against attachment provided by Cal. Code Civ. Proc. §§ 703.010-704.995. (Supp. Opp. at 2; see also id. at 7 ("Defendant would be entitled to carve out certain assets from a writ that were part of California's individual exemption schemes . . . that Defendant, as an individual, would not be afforded to assert if a corporation.")). However, Defendant does not identify any specific provision or exemption to which he is allegedly entitled.

---

[6] Furthermore, California Code of Civil Procedure Section 695.020(a) explicitly provides that "[c]ommunity property is subject to enforcement of a money judgment as provided in the Family Code."

Plaintiff contends that whatever the exemptions Defendant may believe he is entitled to assert, California Code of Civil Procedure sets forth procedures to claim exemptions after levy. (Reply at 7) (citing, inter alia, Cal. Code Civ. Proc. § 703.520 (claim of exemption by judgment debtor is filed with the levying officer), id. § 703.530 (judgment debtor may be required to submit financial statement), id. § 703.570 (hearing is held to determine judgment debtor's right to claimed exemption)). However, Plaintiff ignores California procedures expressly allowing a defendant to claim an exemption before a pre-judgment attachment issues.

California Code of Civil Procedure section 484.020 requires an application for a writ of attachment to include, among other things, "[a] description of the property to be attached under the writ of attachment and a statement that the plaintiff is informed and believes that such property is subject to attachment. Cal. Code Civ. Proc. § 484.020(e). "Where the defendant is a natural person, the description of property shall be reasonably adequate to permit the defendant to identify the specific property to be attached." Id. The purpose of this requirement is to enable an individual defendant to determine whether to claim an exemption before the attachment order issues. See Bank of America v. Salinas Nissan, Inc., 207 Cal. App. 3d 260, 268 (1989). Section 484.070 sets forth the procedure for claiming an exemption to pre-judgment attachment. It provides in relevant part:

\\

\\

\\

(a)   If the defendant claims that the personal property described in the plaintiff's application, or a portion of such property, is exempt from attachment, the defendant shall claim the exemption as provided in this section. If the defendant fails to make the claim or makes the claim but fails to prove that the personal property is exempt, the defendant may not later claim the exemption except as provided in Section 482.100.

. . .

(c)   The claim of exemption shall:

    (1)   Describe the property claimed to be exempt.

    (2)   Specify the statute section supporting the claim.

(d)   The claim of exemption shall be accompanied by an affidavit supporting any factual issues raised by the claim and points and authorities supporting any legal issues raised.

(e)   The claim of exemption, together with any supporting affidavit and points and authorities, shall be filed and served on the plaintiff not less than five court days before the date set for the hearing.

(f)   If the plaintiff desires to oppose the claim of exemption, the plaintiff shall file and serve on the defendant, not less than two days before the date set for the hearing, a notice of opposition to the claim of exemption, accompanied by an affidavit supporting any factual issues raised and points and authorities supporting any legal issues raised. . . .

(g)   If the plaintiff files and serves a notice of opposition to the claim as provided in this section, the defendant has the burden of proving that the property is exempt from attachment.

Cal. Code Civ. Proc. § 484.070; see also Bank of Am., 207 Cal. App. 3d at 270 ("It could hardly be clearer that, just as the defendant is required to make exemption claims before a noticed hearing on an attachment application, so the plaintiff is required to oppose any such claims. A defendant is deemed to have waived any untimely claim of exemption for personal property. Similarly, a plaintiff's lack of opposition concedes the propriety of timely exemption claims.").

Here, Defendant's attempt to assert a right to exemptions under Sections 703.010-704.955 fails because Defendant does not identify the specific property he claims to be exempt, or the specific statute supporting the claim, as required by Section 484.070(c). Nor does Defendant's Supplemental Declaration explain

why any of the property at issue is exempt under these statutes. Because Defendant has failed to show an entitlement to exemptions under Sections 703.010-704.955, such claims are waived for purposes of the instant Application.  This defense fails.

                d.   Defendant Has Not Shown That The Funds To Be Attached Are Necessary To Support Him Or His Family

Defendant maintains that funds necessary to support him and his family, including funds needed for legal fees incurred in his defense in the instant action, are exempt from attachment. (Supp. Opp. at 2, 7) (citing, _inter alia_, Cal. Code Civ. Proc. § 487.020(b); <u>Randone v. Appellate Dep't</u>, 5 Cal. 3d 536, 562 (1971)).  Plaintiff contends that in order to assert this exemption, Defendant must disclose all of his assets and sources of income.  (Reply at 7).

Defendant is correct as a general proposition that funds necessary to support a defendant or his family are exempt from prejudgment attachment.  Section 487.020(b) explicitly provides that property is exempt "which is necessary for the support of a defendant who is a natural person or the family of such defendant supported in whole or in part by the defendant."  Cal. Code Civ. Proc. § 487.020(b); <u>see also</u> <u>Doyka v. Superior Court</u>, 233 Cal. App. 3d 1134, 1137 (1991) ("[P]roperty necessary for the support of the defendant or the defendant's family is exempt from attachment.").
\\
\\

However, "[a] claim that property is exempt because it is necessary for the support of the defendant or his or her family must include a financial statement detailing the earnings of all family members and listing their assets and obligations."  Cal. Judges Benchbook, Civ. Proc. Before Trial § 14.80.  Defendant did not disclose in his declaration any evidence showing his, or his family's, income, assets and debts.  Defendant therefore failed to show that the assets Plaintiff is seeking to attach are necessary for the support of him and his family.[7]  This defense fails.

e.   Defendant Has Not Shown That Payment And Performance Bonds Will Adequately Protect Plaintiff

Defendant argues that "it is likely that [Plaintiff] is adequately protected by the performance bonds" on certain projects, whereas if a writ of attachment were to issue, it would "ground all activity on all projects for Defendant and bring Defendant's business to a complete stop."  (Supp. Opp. at 2, 8).  Plaintiff argues that "[p]ayment bonds on projects only cover the contributions owed to the employees for their work on the bonded project, and do not cover [Plaintiff's] claim for liquidated damages and audit fees."  (Reply at 4).  Furthermore, Plaintiff notes that the performance bond attached to the Dominguez declaration "only guarantees [Defendant's] performance of its

---

[7] Despite the lack of evidence from Defendant, Plaintiff voluntarily reduced the amount of the requested attachment to $75,000 -- some $27,000 less than the amount Plaintiff claims it is owed, at a minimum, under the contracts -- specifically in order to accommodate Defendant's potential financial needs.

contract with the Whittier School District and [Plaintiff is] not a beneficiary of the bond and cannot recover under the bond." (Id. at 4 n.4) (citing Dominguez Supp. Decl., Exh. B at 16).

The Court is not persuaded that Defendant's bonds on will necessarily fully protect Plaintiff should it eventually prevail at trial. As Plaintiff contends, because Defendant has not cooperated in the audit of his records, even if Plaintiff could assert claims on the bonds, it is unclear whether Plaintiff would be able to do so within the applicable statutes of limitation. Similarly, it is not clear that the amounts of the bonds will be sufficient to cover any additional claims Plaintiff may discover, or even the liquidated damages, interest, and audit fees on currently known projects. (Reply at 4). Furthermore, Defendant has not cited to any case precluding a creditor from obtaining a writ of attachment against a debtor's property simply because payment may be available indirectly from another source at the conclusion of the action. This defense fails.

    f.    The Attachment Amount Is Not Inflated Due To
          Plaintiff's Entitlement To Liquidated Damages

Defendant summarily asserts, without citation to law or further elaboration, that Plaintiff's liquidated damages claim is "arguably impermissible given the punitive nature of the damages." (Supp. Opp. at 2, 8). Plaintiff emphasizes that both the written agreements and ERISA, 29 U.S.C. § 1132(g)(2), provide for liquidated damages, which the Ninth Circuit has "repeatedly held

. . . are _mandatory elements_ of any court award." (Reply at 2)
(citing cases; emphasis in original).

Section 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for
> or on behalf of a plan to enforce section 1145 of this
> title in which a judgment in favor of the plan is
> awarded, the court shall award the plan--
>
>     (A) the unpaid contributions,
>     (B) interest on the unpaid contributions,
>     (C) an amount equal to the greater of--
>         (i) interest on the unpaid contributions, or
>         (ii) _liquidated damages_ provided for under the
>              plan in an amount not in excess of 20
>              percent (or such higher percentage as may
>              be permitted under Federal or State law) of
>              the amount determined by the court under
>              subparagraph (A),
>     (D) reasonable attorney's fees and costs of the
>         action, to be paid by the defendant, and
>     (E) such other legal or equitable relief as the court
>         deems appropriate.

29 U.S.C. § 1132(g)(2) (emphasis added); _see also_ Nw. Adm'rs, Inc.
v. Albertson's, Inc., 104 F.3d 253, 257 (9th Cir. 1996) ("Section
1132(g)(2) is 'mandatory and not discretionary.' To be entitled

to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award.") (internal citation omitted).

It is undisputed that the agreements here provide for liquidated damages. (See, e.g., Higa Decl. ¶ 11.2). Defendant's cursory and unsupported argument alleging that liquidated damages are impermissible is flatly contradicted by the ERISA statute specifically requiring the court ("the court shall award the plan") to assess such damages. This defense fails.

**V.**

**CONCLUSION**

Plaintiff has satisfied the criteria for the issuance of a writ of attachment. Defendant's attempted defenses are unpersuasive. Accordingly, Plaintiff's Application for a Right to Attach Order and Writ of Attachment, as amended by the reduction in the amount to be attached to $75,000, is GRANTED.

At the hearing, Plaintiff argued against the posting of a bond as a condition of levying the writ of attachment on the ground that Defendant was unlikely to prevail in this matter, rendering the purpose of the bond -- to protect a defendant against a wrongful attachment -- moot. However, this argument does not address the statutory requirement. See Cal. Code Civ. Proc. §§ 489.210-

489.220. Because the Court has not found any authority allowing it to exercise discretion regarding the posting of a bond, a bond is necessary here.  See Vershbow v. Reiner, 231 Cal. App. 3d 879, 883 (1991) ("Absent the prerequisite undertaking, the writ of attachment issued by the clerk of the court was void ab initio . . . ."). If Plaintiff is aware of any contrary authority, Plaintiff may file a Notice of Authority within 7 days of the date of this Order, with a brief explanation in support of its contention that no bond is required.  Defendant may file a response within 7 days of service of the Notice.  If the Court is persuaded that a bond is not required, the Court may amend this Order.  Plaintiff shall submit a proposed Right to Attach Order and Writ of Attachment reflecting the amended sum to be attached within seven days of the date of this Order.

DATED:  November 21, 2017

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE